UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ARGENT PREPARATORY ACADEMY f/k/a SILVER STATE CHARTER SCHOLS,<br><br>Plaintiff,<br>v.<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania insurance business corporation; and DOES I through XX,<br><br>Defendants. | Case No. 3:18-cv-00134-MMD-WGC<br><br>ORDER |

**I.      SUMMARY**

This case involves a dispute over insurance coverage between Plaintiff Argent Preparatory Academy f/k/a Silver State Charter Schools ("Argent") and Defendant Philadelphia Indemnity Insurance Company ("Philadelphia"). Argent is a state-funded charter school whose leadership engaged in financial mismanagement. (ECF No. 14 at 3; ECF No. 19 at 4-5.) As a result of this mismanagement, Nevada's First Judicial District Court appointed a receiver and trustee over Argent and ordered Argent to pay the receiver and trustee's fees ("Fees"). (ECF No. 14 at 4-5; ECF No. 19 at 5-6.) Argent contends that its insurance policy with Philadelphia requires Philadelphia to pay the Fees, but Philadelphia disagrees. Before the Court are the parties' cross-motions for summary judgment (ECF Nos. 14, 19). The Court has reviewed the parties' responses and replies (ECF Nos. 18, 25, 26, 29). The Court grants Defendant Philadelphia's motion for summary judgment because the claim was not made within the policy period.

**II.     BACKGROUND**

The following facts are undisputed unless otherwise indicated.

### A. Argent's Noncompliance

Argent operated a single school in Carson City, Nevada, under the oversight authority of the State Public Charter School Authority (the "Authority"). (ECF No. 14 at 3; ECF No. 19 at 3.) The Authority seems to have served as Argent's sponsor under NRS § 388A.150 and related statutes. (*See* ECF No. 14 at 3 ("The [Authority] has broad oversight authority over [Argent] pursuant to NRS § 388A.150."); ECF No. 15-5 at 5 ("[T]he school was sponsored by the [Authority]."); ECF No. 26 at 8 (stating that Argent does not object to the admission of the January 4, 2016 Meeting Minutes located at ECF No. 15-5).) In this capacity, the Authority was empowered to revoke or terminate Argent's charter under certain circumstances. *See* NRS § 388A.330 (prescribing conditions and process for sponsor to revoke charter).

The Authority sent Argent a "first Notice of Breach" on December 12, 2014. (ECF No. 19 at 4-5; ECF No. 26 at 6 ("Plaintiff does not object to the admission of the Notice of Breach letter . . . ."); ECF No. 19-2 at 5 (Notice of Breach).) The Notice of Breach identified Argent's financial mismanagement issues and indicated that Argent's organizational performance "has moved [Argent] into Level Two of the intervention ladder," a process for resolving concerns about charter schools. (*See* ECF No. 19-2 at 5-6.) The Notice of Breach required Argent to take certain steps to return to good standing. (*Id.* at 6.)

About ten months later, on October 26, 2015, the Authority sent Argent a "formal Notice of Closure" under NRS § 388A.330 (formerly NRS § 386.535). (ECF No. 19 at 5; ECF No. 26 at 6 ("Plaintiff does not object to the admission of the Notice of Closure . . . ."); ECF No. 15-2 at 2-3 (Notice of Closure).) The Notice of Closure explained that Argent engaged in a pattern of fiscal mismanagement; set a 30-day period for corrective action; and scheduled a public hearing for December 4, 2015, at which the Authority's board would determine whether to revoke Argent's charter. (ECF No. 15-2 at 2-3.) The Notice of Closure identified itself "as the school's formal Notice of Closure as required by NRS 386.535." (*Id.* at 3.)

///

The Authority held a series of hearings and ultimately petitioned the First Judicial District Court of Nevada to appoint a receiver and trustee to oversee Argent. (ECF No. 19 at 5; ECF No. 26 at 9.) The First Judicial District Court appointed a receiver and trustee and has subsequently ordered that Argent pay the Fees. (ECF No. 19 at 6; ECF No. 26 at 9.) Argent seeks coverage of the Fees under its insurance policy ("Policy") with Philadelphia.

### B. The Policy

Argent entered into the Policy effective from November 26, 2015, to November 26, 2016. (ECF No. 19 at 3; ECF No. 26 at 3.) The Policy is a claims-made policy, meaning that it only covers claims made against Argent during the policy period. (ECF No. 19 at 3; ECF No. 26 at 4.)

Argent made a demand for coverage under the Policy for the fees and expenses of the Receiver and Trustee on November 10, 2016. (ECF No. 14 at 5; ECF No. 18 at 2-3.) Philadelphia denied coverage because, among other things, the Notice of Closure sent on October 26, 2015, constituted a "claim" made before the policy period began on November 26, 2015. (ECF No. 14 at 5; ECF No. 18 at 2-3.)

### III. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to

raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted) (quoting William W. Schwarzer, *et al.*, The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 499 (Feb. 1992)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

**IV. DISCUSSION**

Philadelphia argues that there is no coverage under the Policy for the Fees because the claim was made when the Authority sent Argent the Notice of Closure on October 26, 2015—a month before the policy period began on November 26, 2015. (ECF No. 19 at 7-

1    9.) Argent counters that the Notice of Closure is not covered under the Policy's definition
2    of a claim. The parties' dispute thus involves a straight forward interpretation of the Policy.
3    "A federal court, sitting in diversity, construing an insurance policy, must apply the
4    law of the state in construing an insurance policy." *Fortis Benefits Ins. Co. v. Johnson*, 966
5    F. Supp. 987, 989 (D. Nev. 1997), *aff'd*, 152 F.3d 925 (9th Cir. 1998) (internal citations
6    omitted). Under Nevada law, courts must construe policy terms based on "their plain,
7    ordinary and popular connotations." *Fourth St. Place v. Travelers Indem. Co.*, 270 P.3d
8    1235, 1239 (Nev. 2011), *as modified on reh'g* (May 23, 2012) (citation omitted); *see also*
9    *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014). As for whether a term
10   is ambiguous, courts should look to the parties' "reasonable expectations of coverage as
11   drafted" and should view a term "in conjunction with the policy as a whole in order to give
12   a reasonable and harmonious meaning and effect to all its provisions." *Fourth St. Place*,
13   270 P.3d at 1239 (internal quotation marks and citations omitted). Moreover, courts must
14   construe any ambiguity against the insurer. *Id.*

15   As relevant here, the Policy defines a claim as (1) "[a]ny written demand for
16   monetary or non-monetary relief (including injunctive)" or (2) "[a]ny formal administrative,
17   judicial, regulatory or tribunal proceeding, including any proceeding before the Equal
18   Employment Opportunity Commission or any similar governmental agency, commenced
19   by the filing of a notice of charges, formal investigative order, service of summons,
20   subpoena or similar document." (ECF No. 19 at 4; ECF No. 26 at 5 (stating that Argent
21   does not object to the quoted portion of the Policy).)[1]

22   The Notice of Closure satisfies both definitions of a claim under the Policy. First,
23   the Notice of Closure constitutes a request for non-monetary relief. The Authority gave
24   Argent 30 days to take corrective action and threatened revocation of Argent's charter if it
25   did not take such action. (*See* ECF No. 15-2 at 2.) Thus, the non-monetary relief requested
26   ///

---

[1] While the copy of the Policy attached as an exhibit (ECF No. 15-14) to Argent's motion for summary judgment is not authenticated, both parties rely on the exhibit and do not dispute its authenticity. (*See, e.g.*, ECF No. 14 at 5; ECF No. 19 at 3.)

consists of the corrective action that Argent was required to take to avoid revocation of its charter.

Second, the Notice of Closure initiated a "formal administrative [or] regulatory . . . proceeding . . . commenced by the filing of a notice of charges . . . or similar document." (*See* ECF No. 19 at 4.) Nevada law allows the sponsor of a charter school to revoke or terminate a charter contract if the sponsor determines that the charter school, its officers, or its employees failed to comply with generally accepted standards of fiscal management. NRS § 388A.330(1)(a)(2). The relevant statute details a process that the school's sponsor—here, the Authority—must undertake to revoke or terminate a charter contract. *See id.* § 388A.330(2)-(3). The sponsor must provide written notice of its intent to revoke or terminate the charter to the school's governing body. *Id.* § 388A.330(2). The notice must list the reasons for revocation; establish a cure period; set a date on which the sponsor will determine whether the school has corrected the deficiencies; and set a date for a public hearing where the sponsor will consider whether to revoke or terminate the charter. *Id.* § 388A.330(2)(a)-(d). The sponsor then must hold the public hearing for determining whether to revoke or terminate the charter within 90 days of providing the notice under subsection 2. *Id.* § 388A.330(3). Thus, under Nevada's statutory scheme, the regulatory process for revoking a charter school's contract commences with the issuance of a notice of intent to revoke. The statute does not prescribe an informal process that must be taken before initiating the process described in NRS § 388A.330(2)-(3).

The process prescribed by NRS § 388A.330 and initiated by the Notice of Closure in this case constitutes a formal administrative or regulatory proceeding commenced by the filing of a notice of charges or similar document within the plain meaning of the Policy. *See Watson v. Watson*, 596 P.2d 507, 508 (Nev. 1979) ("Courts are bound by language which is clear and free from ambiguity and cannot, using the guise of interpretation, distort the plain meaning of an agreement."). The Notice of Closure required under NRS § 388A.330(2) qualifies as "a notice of charges [or] similar document" in that it must list the reasons for revocation. The subsequent proceeding prescribed by Nevada law—

6

consisting of a cure period and a public hearing to determine whether revocation or termination is appropriate—is formal as well as administrative or regulatory in nature. The entire process is formal because it prescribes certain steps that lead to a substantive outcome—a decision about whether to revoke or terminate the school's charter. The public hearings that were held also had indicia of formality—individuals were sworn in and gave testimony under oath. (ECF No. 14 at 4 ("The [Authority] took evidence at the December 4, 2015 hearing . . . . At the January 4, 2016 hearing, after taking additional evidence, the [Authority] voted to revoke [Argent's] charter."); ECF No. 15-4 at 4; ECF No. 15-5 at 5.) Plaintiff argues that the process is not formal because Argent's attendance at the board meeting was discretionary (ECF No. 26 at 16), but many formal proceedings do not require an interested parties' attendance. Rather, formal proceedings typically require notice and an opportunity to be heard, both of which Argent had here. The process is administrative or regulatory in nature because it relates to the school's compliance with certain requirements. *See* NRS § 388A.330(1)(a).

Argent argues that the Notice of Closure was simply a notice of non-compliance; it did not "assert liability, seek money damages, threaten formal proceedings or hold anybody personally liable." (ECF No. 26 at 14.) But the Notice of Closure was more than a notice of non-compliance—it was the document that initiated the process for revocation or termination of Argent's charter under NRS § 388A.330.

Argent argues that the Notice of Closure did not state that the Authority had initiated formal proceedings or hearings, and the board meetings held by the Authority were not formal hearings because the Notice of Closure provided a cure period. (ECF No. 26 at 16.) Contrary to Argent's assertion, the Notice of Closure indicated that it "serves as the school's formal Notice of Closure as required by NRS 386.535 [now NRS § 388A.330]." (ECF No. 15-2 at 3.) And the opportunity to cure is not informal—it is required by state law. *See* NRS § 388A.330(2)(b) ("The written notice must . . . prescribe a period . . . during which the charter school may correct the deficiencies . . . .").

///

Argent also argues that the Notice of Closure did not indicate that the Authority would seek the appointment of a receiver or trustee. (ECF No. 26 at 16.) This is immaterial. The definition of "claim" in the Policy does not depend on the result of the proceeding at issue. It is the fact of a proceeding—not its result—that shows the Notice of Closure constituted a claim within the meaning of the Policy.

Argent argues that there is "ambiguity in the Policy" for the first time in its reply in support of its own motion for summary judgment (and not in its response to Philadelphia's motion for summary judgment), though Argent does not identify any specific term that is ambiguous. (ECF No. 25 at 14.) In support of its argument, Argent discusses another case in which Philadelphia allegedly took the position that a Notice of Closure did not trigger a claim within the meaning of the Policy. (*Id.*) "Whether a term is ambiguous depends on whether it creates reasonable expectations of coverage as drafted." *Fourth St. Place*, 270 P.3d at 1239. The second policy exclusion discussed herein is not ambiguous. It does not create a reasonable expectation of coverage in these circumstances because the Notice of Closure initiated a formal administrative or regulatory process for revoking or terminating Argent's charter.

Accordingly, the Court grants Philadelphia's motion for summary judgment.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

It is therefore ordered that Philadelphia's motion for summary judgment (ECF No. 19) is granted.

///

///

///

///

It is further ordered that Argent's motion for summary judgment (ECF No. 14) is denied as moot.

The Clerk of the Court is instructed to enter judgment in favor of Philadelphia and close this case.

DATED THIS 4th day of March 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE